UNITED STATES BANKRUPTCY COURT        FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
                                 :
In re                              :     Chapter 11
                                 :
        BOZEL S.A.,                :
                                 :     Case No. 10-11802 (AJG)
                               :
               Debtor.        :
                               :
---------------------------------------------------------
                               :
ANDREW BICKERTON as Liquidator of  :
                               :
Wellgate International Limited and    :
                               :     A.P. No. 10-03249 (AJG)
CRASTVELL TRADING LIMITED,    :
                               :
             Plaintiffs,     :
                               :
               v.             :
                               :
BOZEL S.A. and MICHEL MARENGÈRE,  :
                               :
             Defendants.    :
                               :
---------------------------------------------------------

### OPINION REGARDING DEFENDANTS' MOTION FOR PERMISSIVE ABSTENTION AND/OR A STAY OF THE PROCEEDINGS PENDING RESOLUTION OF LUXEMBOURG PROCEEDINGS

**APPEARANCES:**

DAMON MOREY LLP
Proposed Attorneys for the Debtor, Debtor-In-Possession, and Defendant Bozel S.A.
The Avant Building, Suite 1200
200 Delaware Avenue
Buffalo, NY 14202
By:    Daniel F. Brown, Esq.
        William F. Savino, Esq.

Joseph G. Makowski, Esq.
Attorney for Defendant Michel Marengère
420 Franklin Street

Buffalo, NY 14202

GREENBERG TRAURIG, LLP
Attorney for Andrew Bickerton
as Liquidator of Wellgate International Limited, Plaintiff
200 Park Avenue
New York, NY 10166
By:    Allen G. Kadish, Esq.
        Adam Dembrow, Esq.

1221 Brickell Avenue
Miami, FL 33131
By:    Mark D. Bloom, Esq. (admitted *pro hac vice*)
        Paul J. Keenan, Esq. (admitted *pro hac vice*)

KLESTADT & WINTERS, LLP
Attorneys for Crastvell Trading Limited, Plaintiff
292 Madison Avenue, 17th Floor
New York, NY 10017
By:    Tracy L. Klestadt, Esq.

ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

Before the Court is a complaint and claims for relief (the "Complaint") by

Plaintiffs Andrew Bickerton (the "Liquidator"), in his capacity as Liquidator of Wellgate

International Ltd. ("Wellgate") and Crastvell Trading Limited ("Crastvell") against

Defendant Bozel, S.A. (the "Debtor") and Michel Marengère ("Marengère," together

with the Debtor, the "Defendants") seeking (1) a judicial determination that, as a matter

of corporate governance, the Liquidator of the Debtor's sole shareholder has the authority

to take any and all actions consistent with that position, including but not limited to

removing the Debtor's director, Marengère, from his role as the Debtor's sole director,

and directing Marengère and the Debtor to turn over to the Liquidator books, records, and

documents and to submit to the Liquidator's authority; (2) an order granting a

preliminary, and then permanent, injunction pursuant to 11 U.S.C. § 105 and Bankruptcy

Rule 7065 (a) restraining and enjoining Marengère, and any individual or entity

controlled or directed by him, (i) from exercising, or attempting to exercise, any control

over the assets of the Debtor or of any of its non-debtor subsidiaries, (ii) from interfering

in any way with the rights of the Liquidator, including the Liquidator's rights to assert

control over the assets of the Debtor and of any of its non-debtor subsidiaries, and (b)

directing Marengère, and any individual or entity controlled or directed by him, to turn

over to the Liquidator any and all books and records of the Debtor and of any of its non-

debtor subsidiaries; and (3) such other and further relief as the Court deems just and

proper.

**Background**

The Liquidator was duly appointed by the Eastern Caribbean Supreme Court in

the High Court of Justice, British Virgin Islands (the "BVI Court") pursuant to the British

Virgin Islands Insolvency Act, 2003 (the "BVI Insolvency Act") as the liquidator of

Wellgate, a company organized under the laws of British Virgin Islands ("BVI").

Wellgate, a company in the business of financing the merger and acquisition of distressed

assets and non-core subsidiaries of large conglomerates, owns 100% of the stock of the

Debtor. The Debtor[1] is a holding company that owns 100% of the stock in Bozel LLC

("Bozel LLC"),[2] Bozel Europe S.A.S. ("Bozel Europe"),[3] and Bozel Mineracao Itda[4]

("Bozel Brazil," and together with Bozel LLC and Bozel Europe, the "Bozel

Subsidiaries"). The Debtor invented Calcium Silicon Cored Wire, an industry-preferred

---

[1] The Debtor is a public company limited by shares (a *societe anonyme* or "S.A.") organized under the Grand Duchy of Luxembourg. It is registered with the Luxembourg Trade and Companies Register under the number B107769.
[2] Bozel LLC is organized in the state of Florida and markets and distributes in the United States products produced by Bozel Brazil.
[3] Bozel Europe is a manufacturing company organized in France that produces primarily Cored Wire.
[4] Bozel Brazil is a manufacturing company organized in Brazil that produces primarily CaSi and Cored Wire.

ingredient in the production of high quality steel and steel alloys and is a worldwide

leader in the sale of calcium silicon ("CaSi"), selling over 40% of the world's CaSi

powder output.

      The second Plaintiff in the above-captioned adversary proceeding (the "Adversary

Proceeding"), Crastvell, is a BVI company that is the Debtor's largest secured creditor.

Defendant Marengère purports, and the Liquidator disputes, that he is the Debtor's

managing director.

      In an order dated March 9, 2010 and entered on March 10, 2010 (the "BVI

Order"), the BVI Court appointed the Liquidator as the liquidator in Wellgate's

insolvency proceeding pursuant to the BVI Insolvency Act.  Among other things, the BVI

Order authorized the Liquidator to carry on the business of Wellgate, sell or otherwise

dispose of its property, and undertake all acts and execute any document on behalf of

Wellgate.  Pursuant to his appointment, the Liquidator has a duty to investigate and report

on the business of Wellgate, which includes business affairs of the Debtor and the Bozel

Subsidiaries.[5]

      On April 6, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.  Pursuant to § 1707(a) and § 1108 of the

Bankruptcy Code, the Debtor continues to operate its business as a debtor-in-possession.

---

[5] On March 19, 2010, the Liquidator sent an email to Marengère, informing Marengère of his appointment
by the BVI Court as the liquidator of Wellgate.  The email states, "As a result of my appointment as
Liquidator under the Order, please take notice that you no longer have statutory powers over the affairs of
Wellgate and its subsidiaries listed above.  Accordingly, no actions should be taken by you in relation to
the operations and affairs of these companies without my express authorization and written approval . . . ."
(Compl. Ex. F.)  On March 22, 2010, Marengère executed a resolution on behalf of the Debtor entitled
Consent in Lieu of Meeting of Directors, which purported to resolve, among other things, that the Debtor
file a Chapter 11 petition as soon as practicable.  The Liquidator alleges that Marengère did not provide any
advance notice of the corporate resolution dated March 22, 2010 or of the Debtor's Chapter 11 filing.
Marengère's corporate counsel, Mr. Makowski alleged that he left several telephone messages for the
Liquidator to advise him of the Debtor's Chapter 11 filing on the Petition Date (defined herein) and also
copied the Liquidator on an email Makowski sent to Mark Forte, Wellgate's BVI Solicitor, advising him of
the Debtor's Chapter 11 filing.  (Compl. Ex. M.)

On April 7, 2010, the Liquidator executed a document of the Debtor entitled "Resolutions of the Sole Shareholder" (the "Shareholder Resolution") which, among other things, resolves "to remove Mr. Michel Marengère from his office of director (*administrateur*) and of day-to-day managing director (*administrateur-délégué*) of [the Debtor] and to give effect to this removal as at [sic] March 10, 2010." (Compl. Ex. H.) On April 8, 2010, the Liquidator caused the *Journal Officiel du Grand-Duché de Luxembourg* to publish an "*Extrait des résolutions*" ("Resolutions Certificate"), which sets forth the Shareholder Resolutions in substantial part.[6] The Debtor alleges, and the Liquidator disputes, that the Shareholder's Resolution was improper and void *ab initio* as a matter of Luxembourg law.

On April 28, 2010, the Liquidator filed a motion (1) to enforce corporate governance rights, (2) to designate responsible persons, or in the alternative, (3) for relief from the automatic stay (the "Governance Motion")[7] and an ex parte application (the "Ex Parte Application") to shorten time for notice and hearing on the Governance Motion. On April 29, 2010, the Debtor filed an objection to the Ex Parte Application.

---

[6] On April 15, 2010, the Liquidator transmitted a second letter to Marengère with the subject "Corporate Governance and Control of Bozel S.A." (the "Second Bickerton Letter"). The Second Bickerton Letter reiterated some of the main points in the First Bickerton Letter and instructed Marengère to exercise no further authority and control over the Debtor. On the same date, the Liquidator's counsel, Greenberg Traurig LLP, transmitted a letter (the "Demand Letter") on behalf of the Liquidator to the Debtor's proposed bankruptcy counsel, Damon Morey LLP, with enclosures in support of Mr. Bickerton's authority as Liquidator and called to attention the Second Circuit opinion in the case of *Manville* on the issue of corporate governance rights of shareholders. *See Manville Corp. v. Equity Sec. Holders, Comm., A.F. (In re Johns-Manville Corp.)*, 801 F.2d 60, 63 (2d Cir. 1986). In response to the Second Bickerton Letter, Marengère's corporate counsel, Mr. Joseph G. Makowski, sent a letter to the Liquidator dated April 16, 2010 (the "Marengère Response Letter") disputing the representations made regarding the Liquidator's authority over the Debtor and the Bozel Subsidiaries in the First Bickerton Letter, the Second Bickerton Letter, and the Demand Letter. In addition, Marengère demanded the Liquidator to immediately rescind the Shareholder Resolution or he would commence proceedings in Luxembourg to void the Liquidator's appointment *ab initio*. (Compl. Ex. M.)
[7] Crastvell filed a joinder to the Governance Motion on May 5, 2010.

On May 5, 2010, Marengère commenced two proceedings against the Liquidator in Luxembourg (the "Luxembourg Proceedings"). Among other things, the first proceeding (the "Summary Proceeding") seeks a judicial declaration that the Shareholder Resolution filed by the Liquidator is suspended with immediate effect. The second proceeding (the "Commercial Proceeding") seeks a declaration that the Shareholder Resolution filed by the Liquidator is void *ab initio* under Luxembourg law and further declaration that the Liquidator's actions declaring himself the Debtor's sole managing director and manager is void because (1) no order for his appointment was domesticated in Luxembourg; (2) the Liquidator's actions outside BVI were not authorized; (3) the Liquidator's actions violate Luxembourg law; and are (4) contrary to existing Bozel S.A. governance agreements (the "Bozel Governance Agreement"). Also on May 5, 2010, the Court held a hearing on the Ex Parte Application and a status conference in the Debtor's Chapter 11 case where the Debtor advised the Court about the Luxembourg Proceedings. The Court convened a conference call with the parties on May 6, 2010 and directed (1) the Liquidator to raise the corporate governance issues as alleged in the Governance Motion by way of an adversary proceeding, and (2) that the parties agree on a schedule for briefing and arguments on the issue of the Court's jurisdiction over the corporate governance issues, including the validity of the Shareholder Resolution under Luxembourg law.

To address some of the allegations raised by the Liquidator regarding Marengère's management of the Debtor and the Bozel Subsidiaries,[8] the Court entered an

---

[8] The Liquidator alleges, among other things, that Marengère has been unable and unwilling to account for the Debtor's liabilities to Bozel Brazil and has refused to provide the Liquidator with information regarding the financial situation of the Debtor and the Bozel Subsidiaries. He further alleges that Marengère has been

6

order directing the appointment of a Chapter 11 examiner on May 13, 2010.  An order
approving the appointment of James L. Garrity Jr. as an examiner in the Debtor's Chapter
11 case was entered on May 25, 2010.

As directed by the Court at the May 6, 2010 telephone conference, the Plaintiffs
filed the Adversary Proceeding on May 7, 2010.

Subsequently, the Court held a hearing on May 19, 2010 and ruled that it has
"related to" jurisdiction pursuant to 28 U.S.C. § 1334(b) to consider the corporate
governance dispute raised in the Adversary Proceeding.

On May 28, 2010, the Debtor filed a motion for permissive abstention pursuant to
28 U.S.C. § 1334(c)(1) and comity as to the Complaint, or in the alternative, a stay of the
Debtor's Chapter 11 proceedings pending resolution of the Luxembourg Proceedings (the
"Abstention Motion").  On June 2, 2010, the Plaintiffs filed an objection to the
Abstention Motion (the "Objection to Abstention") and the Plaintiffs' Initial Trial Brief.
On June 11, 2010, the Debtor filed the Defendant's Trial Brief.

On June 18, 2010, the Court held a conference call informing the parties that the
scheduled hearing on June 23, 2010 would address only the issues of (1) whether the
Court should exercise permissive abstention pursuant to § 1334(c)(1) and international
comity and (2) whether the Court has personal jurisdiction over Marengère.  The hearing
(the "Abstention Hearing") on these two issues began as scheduled on June 23, 2010 and
concluded on June 24, 2010.

**The Liquidator's Standing**[9]

---

using proceeds of Bozel Brazil inventory to repay loan and interest payments to the creditors of the Debtor
and Wellgate as well as to defend lawsuits against Marengère personally.
[9] The Liquidator's standing pursuant to Chapter 15 was an issue first raised by the Court.  It was not an
objection raised by the Debtor in its original pleadings.

The Debtor argues that this Court lacks subject matter jurisdiction over the claims as alleged in the Complaint because the Liquidator lacks standing to pursue the Adversary Proceeding in absence of recognition of the BVI Proceeding pursuant to Chapter 15 of the Bankruptcy Code.

§ 1501(b) of the Bankruptcy Code, in relevant parts, provides:

(b) This chapter applies where --
    (1) assistance is sought in the United States by a foreign court or a foreign representative in connection with a foreign proceeding;
    (2) assistance is sought in a foreign country in connection with a case under this title;
    (3) a foreign proceeding and a case under this title with respect to the same debtor are pending concurrently; or
    (4) creditors or other interested persons in a foreign country have an interest in requesting the commencement of, or participating in a case or proceeding under this title.

11 U.S.C. § 1501(b) (2006).

The Debtor argues that, in seeking relief identified in the Complaint, the Liquidator is seeking assistance in the United States in connection with a foreign proceeding within the meaning of § 1501(b)(1) and also seeking to participate in the Chapter 11 proceeding of the Debtor within the meaning of § 1501(b)(4).  The Debtor, however, has confused the issues by referring to Wellgate and Bozel S.A. interchangeably as if they are one in the same when they are, in fact, separate corporate entities.

Chapter 15 is not applicable because no foreign proceeding involving the Debtor has been commenced, and no foreign representative of the Debtor is seeking for ancillary relief before this Court.  The BVI Proceeding is an insolvency proceeding of the Debtor's parent company, Wellgate, and the Liquidator is seeking relief in his capacity as the Debtor's sole shareholder in the Debtor's voluntary Chapter 11 case.  The Debtor does

not dispute the fact that the Liquidator, as the duly appointed representative of Wellgate's insolvency proceeding in BVI, has become the sole shareholder of the Debtor. It is merely challenging the validity of the shareholder's conduct under Luxembourg and BVI law in light of, among other things, the Bozel Governance Agreement.

Further, this case is fundamentally different from the *Caxton*[10] and *J.A. Jones*[11] lines of cases where a foreign representative appointed in a concurrent foreign proceeding of the *same* debtor is seeking assistance and cooperation in an ancillary U.S. proceeding. In those types of situations, Chapter 15 would be applicable and a foreign representative would have to first obtain recognition of the foreign proceeding before a U.S. court could grant relief under the statute. But this case does not involve an original proceeding commenced by a foreign representative who is seeking to obtain ancillary relief in a U.S. court. This case involves a shareholder, who also happens to be a liquidator in a separate and distinct foreign insolvency proceeding, seeking to exercise his corporate governance rights in the Chapter 11 case of a wholly-owned subsidiary.

Therefore, the Court finds that Chapter 15 is not applicable, and as the sole shareholder of the Debtor, the Liquidator has standing to pursue the Adversary Proceeding.

**Crastvell's Standing**

---

[10] *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, 09 Civ 9021 (PGG), 2010 WL 1779282 *3-4 (S.D.N.Y. Apr. 29, 2010) (finding that the liquidators appointed in a concurrent foreign insolvency proceeding have no standing to seek a stay of an interpleader action in their capacity as the debtor's new board without obtaining recognition under Chapter 15).
[11] *United States v. J.A. Jones Constr. Group, LLC*, 333 B.R. 637, 639 (E.D.N.Y. 2005) (finding that in the absence of recognition under Chapter 15, the court has no authority to consider a request for a stay by an interim receiver appointed by a Canadian court).

The Defendants acknowledge Crastvell's right to be heard before this Court pursuant to 11 U.SC. § 1109,[12] but challenge its direct standing to pursue the Adversary Proceeding.  To the extent that the Court's bench ruling on May 19, 2010 could be interpreted as Crastvell having the right to directly pursue the Adversary Proceeding under § 1109 even if the Liquidator were found to have no standing,[13] it was erroneous because § 1109 does not confer standing on a party to commence an action that it otherwise would not have.  In other words, if the Liquidator did not have standing to commence the Adversary Proceeding in the first place, Crastvell could not be found to have standing to commence the Adversary Proceeding pursuant to § 1109.  By way of clarifying its ruling on May 19, 2010, the Court holds that the Liquidator has standing to bring the Adversary Proceeding, and Crastvell has standing to intervene the Adversary Proceeding under § 1109.  However, Crastvell does not have direct standing to pursue the claims alleged in the Complaint independent of the Liquidator.

In order to have constitutional standing in litigation, a plaintiff must, first, allege an "injury that is concrete, particularized, and actual or imminent; fairly traceable to [Debtor's] challenged behavior; and likely to be redressed by a favorable ruling." *Davis v. Fed. Election Comm'n*, 128 S. Ct. 2759, 2768 (2008); *see Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).  Second, a plaintiff must also establish prudential standing, which means plaintiffs must be neither alleging a generalized grievance, nor asserting the legal rights of a third party.  *See id* at 499.

---

[12] Crastvell has a right to intervene under Fed. R. Bankr. P. 7024, which incorporates Fed. R. Civ. P. 24 ("Rule 24").  Rule 24 states that the court must "permit anyone to intervene . . . who is given an unconditional right to intervene by a federal statute."  FED. R. CIV. P. 24(a)(1).
[13] (Hr'g. Tr. 37-38, May 19, 2010.)

Here, Plaintiffs assert that Crastvell has direct standing to commence the Adversary Proceeding because it is seeking to vindicate its own rights and to protect its own interests as the Debtor's creditor and not the rights of a third party, the Liquidator. However, in making this assertion, the Plaintiffs do not specify which rights or interests it is vindicating. Crastvell is not an equity holder of the Debtor. Its status as a creditor, even as the largest single creditor of the Debtor, does not give it the right to bring claims related to the internal governance of the Debtor corporation as that is a right of an equity holder. Crastvell's appropriate course of action, in the event that it has concerns about Debtor's management, is a motion under 11 U.S.C. § 1104[14] to request an appointment of a trustee. It is true that Crastvell's interests may be impacted by an unfavorable ruling on the corporate governance issue. But such interest alone is not enough to give Crastvell standing. *See Warth*, 422 U.S. at 510 (stating that "incidental congruity of interest" in the absence of other relationship between the injured and claimant parties is insufficient to allow standing). Plaintiffs rely heavily on *In re Cadiz Props.*, 278 B.R. 744 (Bankr. N.D. Tex. 2002) in making the contention regarding Crastvell's direct standing in the Adversary Proceeding. While *Cadiz* stands for the proposition that corporate governance matters are properly resolved in an adversary proceeding, the material dispute in *Cadiz* was whether the creditor in that case had ownership of the stock in the debtor,[15] while

---

[14] 11 U.S.C. § 1104, in relevant parts, provides:
> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
> > (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor . . . ."

11 U.S.C. § 1104(a).

[15] In *Cadiz*, a creditor had a security interest in 100% of the corporation borrower's shares, as held by the corporation's principal. When the corporate borrower went into default, the creditor demanded the shares

here Crastvell has no claim or ownership of the Debtor's stock.  Thus, Crastvell does not have the same claim to standing as the creditor in *Cadiz*.[16]

Since Crastvell is not a shareholder of Debtor, it does not have an independent legal right to a claim based on the internal corporate governance of the Debtor.  Crastvell is an entity entirely distinct from the liquidator of Debtor's parent, Wellgate.  Therefore, any claim it seeks to bring would be to enforce the rights of the Liquidator as sole shareholder of Debtor.  Consequently, any such claims would be asserting the rights of a third party and so fail the prudential element of standing.  *See Warth*, 422 U.S. at 499; *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737 (1984)) (stating the "general prohibition on a litigant's raising another person's rights").

In sum, Crastvell has standing to intervene in the Adversary Proceeding under § 1109 but no direct standing to pursue the Adversary Proceeding independent of the Liquidator.[17]

**Personal Jurisdiction**

Defendant Marengère moved for the claims against him to be dismissed for the Court's lack of *in personam* jurisdiction over him in his individual capacity.  The sum of Marengère's argument is that his contacts with the State of New York are insufficient to impose personal jurisdiction over him in this Adversary Proceeding because Marengère is

---

[16] to be turned over to it and elected a new board of directors with its purported new ownership of all the corporation's shares.  The old board of directors then filed for Chapter 11.  The corporate debtor never delivered the shares to the secured creditor so there was a material dispute over the issue of whether the secured creditor actually owned the shares of the corporate borrower.  The secured creditor challenges the Chapter 11 filing, claiming that it was not approved by the proper board of directors.

[16] In fact, Plaintiffs admitted that "it is not Wellgate's ownership of the stock in [Debtor] that is in question."  (Pls' Joint Reply Def.'s Br. Opp'n Juris. Br. Pls. 6.)

[17] In the alternative, if the Liquidator did not have standing to commence the Adversary Proceeding, the action would have to be dismissed since Crastvell would not have standing to commence the Adversary Proceeding.

12

a citizen of Canada who resides in Quebec, Canada, he does not own, use or possess any real property in New York, and he travels to New York solely in his capacity as the purported managing director of the Debtor to transact business.

Pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure, in a case or civil proceeding arising under the Bankruptcy Code, or case arising in or related to a case under the Bankruptcy Code, a bankruptcy court may exercise personal jurisdiction over a defendant who has been properly served under Rule 7004(d),[18] allowing for nationwide service of process "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States." Fed. R. Bankr. P. 7004(f).[19] Because valid service of process pursuant to Rule 7004(d) is sufficient to establish personal jurisdiction, state long-arm statutes are inapplicable, and the only remaining inquiry for a bankruptcy court is whether exercising personal jurisdiction over the defendant would be consistent with the Due Process Clause of the Fifth Amendment. *In re Enron Corp.*, 316 B.R. 434, 440, 444-45 (Bankr. S.D.N.Y. 2004) (stating that the Fifth Amendment, not the Fourteenth Amendment applies). Since Marengère does not contend that service of process was improper, he is subject to personal jurisdiction in this Court so long as the Due Process requirements are satisfied.

The Due Process analysis requires that: (1) the defendant has sufficient "minimum contacts" with the United States as a whole; and (2) the exercise of jurisdiction is "reasonable" such that it would not offend "traditional notions of fair play

---

[18] Rule 7004(d) provides: "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." Fed. R. Bankr. P 7004(d).

[19] Rule 7004(f) provides: "If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code." Fed. R. Bankr. P 7004(f).

and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108-09,

113 (1987); *see also Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998) (stating the

analysis under the Fifth and Fourteenth Amendments is basically the same with the

primary difference being that the Fifth Amendment looks at contacts with the United

States, not the forum state); *In re Bernard L. Madoff Inv. Sec. LLC,* 18 B.R. 75, 79-80

(Bankr. S.D.N.Y. 2009) (citations omitted) (applying minimum contacts with the United

States as a whole in a bankruptcy proceeding).

*A. Minimum Contacts*

 *i. General Jurisdiction*

A court may establish general jurisdiction over a defendant in any action,

regardless of whether the suit arises out of the defendant's contacts with the forum

jurisdiction, if the defendant's contacts with the forum are "continuous and systematic,"

whereby establishing personal jurisdiction would not offend Due Process.  *See*

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984).  First,

Marengère has purposefully availed himself of the privilege of conducting business in the

U.S. as he is listed as the registered agent, director, or managing member of three

corporate entities in Florida: Bozel, LLC, 373 Florida Corp., and Spearhead Limited, Inc.

Bozel, LLC is one of the Debtor's wholly owned subsidiaries, and it is a Florida limited

liability company, while 373 Florida Corp. and Spearhead Limited Inc. are incorporated

in Florida.  Second, the address 555 South Federal Highway, Suite 260, Boca Raton,

Florida was listed as Marengère's professional address in both the filings of the

Luxembourg Proceedings as well as the Bozel Governance Agreement.  Marengère

verified at the § 341 hearing on June 11, 2010 that he is in control of this Florida location

(341 Hr'g. Tr. 64, May 21, 2010.)  Further, Debtor's proposed counsel represented that

Marengère conducts meetings with the vice president of Bozel LLC, Mr. Joseph

Mineracao, in New York, and management meetings relating to Bozel LLC and the

Debtor occurs in New York eighty-five percent of the time.  (Hr'g. Tr. 5, May 5, 2010.)

Marengère also informed the U.S. Trustee that he opened a bank account for the Debtor

in New York.  (341 Hr'g. Tr. 24.)  Although Marengère is not always physically present

in the United States when conducting business in the United States, the Supreme Court

has held that physical presence in the forum is not required to establish minimum

contacts.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Calder v.

Jones*, 465 U.S. 783, 787 (1984).  Most importantly, Marengère purposefully availed

himself of the protections afforded by U.S. law by signing and filing for the Debtor's

Chapter 11 petition in New York.  Since the Commencement Date, Marengère was

present at multiple hearings[20] and testified at the Abstention Hearing on June 24, 2010.[21]

Marengère maintains that he has insufficient contacts with the state of New York

to subject him to personal jurisdiction because his contacts with New York relate only to

his capacity as a corporate officer.  He argues that because he does not have contacts with

New York "personally" he cannot be subject to the jurisdiction of this Court.  These

arguments are flawed.

---

[20] Marengère was questioned by the United States Trustee at the 341 Hearing on June 11, 2010.  He was also present at the status conference on May 5, 2010.

[21] In fact, some courts have gone a step further and found that a defendant's voluntary participation in a bankruptcy case by filing a notice of appearance and attending court hearings constitutes a waiver of any objection to personal jurisdiction.  *See Deak & Co., Inc.*, 63 B.R. 422, 431 (Bankr. S.D.N.Y. 1986) (finding that the requirement of personal jurisdiction is an individual right and can be waived when actions of a defendant amounts to legal submission to the jurisdiction of a court); *Picard v. Cohmad Sec. Corp.* (*In re Bernard L. Madoff Investment Securities, LLC*), 418 B.R. 75, 79 (Bankr. S.D.N.Y. 2009); *Aurora Mgmt. Partners, Inc. v. GC Fin. Servs. (In re Protected Vehicles, Inc.)*, No. 08-80040-DD, 2010 Bankr. LEXIS 1734 *8 (Bankr. D.S.C. May 28, 2010).  The Court will not reach the issue of whether Marengère has waived his right to object to this Court's exercising personal jurisdiction over him since it finds that he has sufficient contacts with the U.S. to satisfy the Fifth Amendment due process standard.

First, it is well established that in the context of bankruptcy proceedings, the minimum contacts analysis should evaluate the defendant's contacts with the United States as a whole, not merely contacts with the forum state.  *See Madoff*, 418 B.R. at 79; *Enron Corp.*, 316 B.R. at 445; *Deak & Co.,* 63 B.R. 422, 430-31 (Bankr. S.D.N.Y. 1986). Thus, Marengère's contention that he has insufficient contacts with the state of New York, ignoring contacts in Florida, fails to apply the appropriate the legal standard. Accordingly, Marengère's extensive contacts with the United States are more than sufficient to establish personal jurisdiction.

Second, Marengère's argument that the Court has personal jurisdiction over him in his capacity as the Debtor's purported director, but not in his individual capacity is without merit or legal basis.  This argument is particularly disingenuous given that, at the Abstention Hearing, Marengère testified that he signed the Bozel Governance Agreement in his capacity "personally," in his capacity as the shareholder of Wellgate, and in his capacity as the "*administrateur délégué*" of the Debtor.  (Hr'g. Tr. 242, Def. Ex. E, Article 9, June 24, 2010.)  Further, Marengère cites no case law in support of this alleged distinction between his individual capacity and his capacity as the Debtor's purported director.  His argument essentially relies on the fiduciary shield doctrine, which submits that it is unfair to subject a defendant to suit in a forum where the defendant's only contacts were for the benefit of the employer, not the defendant personally.  *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981).  This doctrine, however, is not relevant to the constitutional due process analysis and relates only to the reach of state long-arm statutes.  *See id.* at 902-03 n.3 (stating the fiduciary shield doctrine is not a constitutional principle); *In re Teknek, LLC*, 354 B.R. 181, 195 (Bankr. N.D. Ill. 2006)

(same).  Furthermore, the state of New York has expressly rejected this rule as unnecessary as a matter of fairness, and undesirable as a matter of public policy, since fairness concerns are "amply protected by constitutional due process requisites." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 45-46 (N.Y. 1988).

Although status as a corporate officer does not automatically subject a defendant to personal jurisdiction in any forum where the company is subject to jurisdiction, the Supreme Court has recognized that a defendant's status as an employee or corporate officer "does not somehow insulate them from jurisdiction."  *Calder,* 465 U.S. at 790. Thus, the fact that Marengère's contacts with the United States arise from his corporate capacity does not shield him from personal jurisdiction.  *See id.*  Further, it is unreasonable for Marengère to believe that he could regularly conduct business in the United States and seek the protection of its laws and courts, and at the same time believe he could escape the jurisdictional reach of the United States' courts.  *See Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267, 1274 (S.D.N.Y. 1990).  Accordingly, Marengère's contacts are sufficiently "continuous and systematic" to establish general jurisdiction.

*ii. Specific Jurisdiction*

Even if Marengère's contacts were insufficient to establish general jurisdiction, his contacts would clearly be sufficient to establish specific jurisdiction.  *See e.g.*, *Madoff*, 418 B.R. at 80-81; *In re AstroPower Liquidating Trust*, 335 B.R. 309, 317-21 (Bankr. D. Del. 2005).  Specific jurisdiction is proper where the action "arises out of" the defendant's contacts with the forum, and where the defendant "purposely availed" itself of the "privilege of conducting activities within the forum . . . invoking the benefits and protections of its laws."  *Helicopteros*, 466 U.S. at 414 n.8; *Madoff*, 418 B.R. at 80

17

(quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).  Here, Marengère purposely

availed himself of the privileges and laws of the United States by actively conducting

business here on behalf of the Debtor and Bozel, LLC and by filing the Debtor's Chapter

11 petition in this Court.  *See e.g.*, *Madoff*, 418 B.R. at 80-81.  Accordingly, because this

Adversary Proceeding arises out of Marengère's duties as a corporate officer and his

corresponding contacts with the United States, this Court has specific jurisdiction over

him.

### B.  *Reasonableness*

In addition to the minimum contacts analysis, due process requires courts to

consider the reasonableness of subjecting the defendant to personal jurisdiction to ensure

that it comports with "traditional notions of fair play and substantial justice." *Burger*

*King*, 471 U.S. at 476.  The Supreme Court has stated that the reasonableness inquiry

involves evaluating: (1) "the burden on the defendant;" (2) "the forum['s] . . . interest in

adjudicating the dispute;" and (3) "the plaintiff's interest in obtaining convenient and

effective relief." *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444

U.S. 286, 292 (1980)).  Additionally, in cases involving a foreign defendant, the court

should also consider (4) "the procedural and substantive policies of other nations whose

interests are affected by the assertion of jurisdiction;" and (5) "the Federal Government's

interest in its foreign relations policies." *In re Globo Comunicacoes e Participacoes S.A.,*

317 B.R. 235, 257-58 (S.D.N.Y. 2004) (citing *Asahi,* 480 U.S. at 115)).

The Supreme Court has also stated, however, that "[w]hen minimum contacts

have been established, often the interests of the plaintiff and the forum in the exercise of

jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*,

480 U.S. at 114.  As such, the burden shifts to Marengère to present a "compelling case" that establishing personal jurisdiction would be unreasonable.  *See Madoff*, 418 B.R. at 81 (citing *Burger King*, 471 U.S. at 477); *AstroPower*, 335 B.R. at 321 (quoting *Grand Entm't Group, Ltd. v. Star Media Sales*, 988 F.2d 476, 483 (3d Cir. 1993).  Marengère has failed to meet that burden.

In addition to this adversary proceeding, Marengère voluntarily filed the Debtor's Chapter 11 petition in this Court.  Because Marengère is already involved in related proceedings in this Court and frequently travels to New York for business, the burden of asserting jurisdiction over him is slight.  As for the next two factors, both this Court and the Plaintiff have an interest, as a matter of judicial efficiency, in resolving disputes related to the Chapter 11 petition in this forum.  *See Madoff*, 418 B.R. at 82 (finding the United States to be the most efficient forum where there was a related pending liquidation proceeding in the same court).  With respect to the factors applicable to a foreign defendant, the court in Luxembourg also has an interest in establishing jurisdiction over Marengère due to the questions of Luxembourg law present in this dispute.[22]  The existence of an alternate forum, however, does not necessarily require dismissal, and this factor alone does not outweigh the other considerations in this case.  *See Deak*, 63 B.R. at 434-35 (establishing personal jurisdiction where there was an alternate, foreign forum available).  Finally, there is no evidence suggesting that exercising jurisdiction will upset the foreign relations policies of the United States.

In light of the totality of the circumstances, after weighing the fairness considerations and the interests and burdens on the parties, Luxembourg's interest does

---

[22] Luxembourg's public policy interests in adjudicating this dispute are further discussed by this Court when it addresses the issue of abstention in deference to the concurrent proceeding in Luxembourg.

not outweigh the other considerations.  Thus, exercising personal jurisdiction over

Marengère is not unreasonable and does not offend "traditional notions of fair play and

substantial justice."

Therefore, consistent with its ruling on June 23, 2010, the Court finds that it has

personal jurisdiction over Marengère in this Adversary Proceeding.

**Permissive Abstention**

The Defendants argue that under § 1334(c)(1) and comity, there is good cause and

extraordinary circumstances for this Court to abstain from exercising jurisdiction over the

Adversary Proceeding because a parallel foreign proceeding already exists, the dispute

involves foreign nationals and foreign corporations, and the dispute requires translation

and interpretation of complex foreign law.  The Defendants also argue that the unsettled

nature of BVI and Luxembourg law must be finally decided by a Luxembourg court.

The Plaintiffs contend that this Court should exercise jurisdiction because the

Defendants invoked this Court's jurisdiction and the protection of the Bankruptcy Code,

this Court has the ability to adjudicate issues of non-bankruptcy law, including foreign

law, this Court has the greatest interest in the resolution of this dispute, and this Court

could resolve the dispute in the timeliest manner.

28 U.S.C. § 1334(c)(1) provides the statutory standard that courts must apply in

evaluating the appropriateness of exercising permissive abstention:

> Except with respect to a case under Chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1) (2006).

It is widely recognized that courts have a "virtually unflagged obligation . . . to exercise the jurisdiction given to them," and the general rule is that, in the event of concurrent, parallel proceedings, courts should typically allow the proceedings to continue simultaneously, absent "exceptional circumstances." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (discussing concurrent state proceedings*); Madanes v. Madanes*, 981 F. Supp. 241, 263 (S.D.N.Y. 1997) (citing *China Trade & Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987) (discussing concurrent foreign proceedings)).  The movant bears the burden of establishing that permissive abstention is warranted.  *In re Altchek*, 119 B.R. 31, 35 (Bankr. S.D.N.Y. 1990).

While bankruptcy courts have broad discretion to abstain under § 1334, following the guidance of the Supreme Court, this circuit has recognized that abstention should only be exercised in narrow circumstances.  *See N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.*), 293 B.R. 308, 332 (S.D.N.Y 2003); *In re Cody*, 281 B.R. 182, 190 (S.D.N.Y. 2002).  Further, bankruptcy courts are not "required to abstain from deciding issues which are of central importance to the integrity of the bankruptcy process."  *Texaco Inc. v. Sanders (In re Texaco Inc.),* 182 B.R. 937, 946 (Bankr. S.D.N.Y. 1995).  Some of the factors that courts have considered in evaluating whether to abstain include:[23]

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. 1334, (6) the degree of

---

[23] Courts have considered one or more, but not necessarily all twelve of the factors in their abstention analysis.  *Cody*, 281 B.R. at 190.

relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of the court's docket, in addition to other factors.

*Cody*, 281 B.R. at 190-91.

While § 1334(c)(1) does not apply to comity with foreign forums on its face because the plain text of the statute refers to comity with "state courts" with respect to "state law," some courts have extended the statute to foreign proceedings under the doctrine international comity or forum non conviens. *See Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 832-33 (5th Cir. 1993); *In re Regus Business Centre Corp.*, 301 B.R. 122, 128-29 (Bankr. S.D.N.Y. 2003). In *Baumgart*, the court stated that because the statute is viewed as codifying federal abstention doctrines,

> [I]t does not follow that Congress would expressly allow the federal district courts to defer by abstention to state courts 'in the interest of justice,' but would at the same time implicitly divest them of their inherent power to abstain when the interest of justice would be served by a case being heard in a foreign tribunal where the action arose.

*Baumgart*, 981 F.2d at 833.

This Court agrees with the rationale articulated in *Baumgart* and finds that § 1334(c)(1) is applicable in this case.

For the reasons discussed below, the Court finds that the Defendants have failed to meet their burden of establishing the existence of "exceptional circumstances" for this Court to abstain from exercising jurisdiction over the Adversary Proceeding.

First, there is no dispute that the Luxembourg Proceedings constitute "parallel foreign proceedings" to the Adversary Proceeding because they involve identical parties and legal issues. The Luxembourg Court ruled in favor of the Plaintiffs in the Summary

22

Proceeding in an order dated July 1, 2010 (the "July 1, 2010 Order"),[24] denying

Marengère's request to temporarily suspend the Shareholder Resolution declaring the

Liquidator as the sole director of the Debtor pending the Commercial Proceeding.[25]

(Statement/Notice of Filing of Order of The Luxembourg District Court, ECF No. 21, Ex.

B.)  The parties have informed the Court that they are scheduled to file pleadings in the

Commercial Proceeding in October 2010 and expect the court to enter a decision in that

proceeding in November 2010.[26]

A.  *Efficient Administration of the Debtor's Chapter 11 Case*

        The mere existence of an alternative forum is insufficient cause for a court to

exercise permissive abstention, particularly when deferring to an alternate forum could

negatively impact the administration of a debtor's Chapter 11 case. The July 1, 2010

Order is prima facie evidence that the Liquidator properly exercised his corporate

governance powers under Luxembourg law; however, a final resolution on this issue will

not be reached by the Luxembourg Court for at least another five months.  In the interim,

the Debtor's Chapter 11 case will be left completely stagnant as it has been since the

---

[24] Pursuant to the July 1, 2010 Order, the Luxembourg Court held that Marengère's request for the suspension of the Shareholder Resolution is "declared not receivable."  As the Liquidator prevailed in the proceeding, his request for legal fees is granted while Marengère's request for legal fees is rejected.  The court did not reach the issue of whether the Shareholder Resolution should have retroactive effect and stated that the court in the pending Commercial Proceeding has exclusive jurisdiction to make that finding. The parties first informed the Court about the July 1, 2010 Order at a pre-trial conference on July 7, 2010. At that conference, the Plaintiffs stated that they were in the process of translating the July 1, 2010 Order. The certified translation of the July 1, 2010 Order was filed by the Liquidator on July 14, 2010. Subsequently, the Defendants also filed a modified certified translation of the July 1, 2010 Order on July 16, 2010.  The Court reviewed both certified translations of the July 1, 2010 Order and finds that the discrepancies do not amount to significant substantive differences and do not alter the Court's findings and decision in this Opinion.

[25] The July 1, 2010 Order is the equivalent of the denial of interim relief and was sought by Marengère to temporarily suspend the actions taken by the Liquidator as the sole shareholder of the Debtor pending the final resolution of the Commercial Proceeding.  However, the Luxembourg Court did not, as Marengère requested, find that the entire Shareholder Resolution was void because the retroactive aspect of it may be found not to be effective.  By its ruling, the Luxembourg Court clearly gave effect to the prospective aspects of the Shareholder resolution.

[26] The parties' request for expedited relief from the Luxembourg Court in the Commercial Proceeding was rejected.

Petition Date if this Court abstains from exercising jurisdiction over the Adversary

Proceeding.  Virtually no development has been made in the Debtor's reorganization,

including any potential debtor-in-possession financing or even the retention of the

Debtor's proposed bankruptcy counsel.

 In addition, a final adjudication of who should be in control of the Debtor is also

pertinent to and in the best interest of the Bozel Subsidiaries.  The Bozel Subsidiaries are

profitable operating companies that are the Debtor's only valuable assets.  Due to the

corporate governance dispute, the Debtor's sole shareholder has been unable to obtain

important information regarding the operations of the Bozel Subsidiaries and the Bozel

Subsidiaries have received conflicting directives from Marengère and the Liquidator.  A

timely final adjudication of this issue is critical to maintaining operational stability and

maximizing value for the Bozel Subsidiaries.  Moreover, once the Debtor's management

is ascertained, it is likely that the Debtor would no longer need a Chapter 11 examiner,

thereby saving the estate unnecessary administrative expenses.  As this Court is presiding

over the Debtor's Chapter 11 case and has become familiar with the facts, legal issues,

and applicable law relating to the corporate governance dispute, it is in the best interest of

the Debtor and the Bozel Subsidiaries for this Court to finally adjudicate this matter.

 Accordingly, the efficient administration of the Debtor's estate factor weighs

heavily in favor of not exercising abstention.

*B.  Difficulty or Unsettled Nature of Applicable Law*

 For purposes of permissive abstention, the Court need not determine with

certainty all points of Luxembourg law.  Although the two experts, Ms. Marlen Watté-

Bollen ("Ms. Watté") and Mr. Pierre Olivier-Wurth ("Mr. Wurth"), rendered divergent

opinions on the potential outcome of the Luxembourg Proceedings, the record reflects

that they agree on multiple applicable legal principles that are adequate in resolving the

dispute in this case.  For example, both experts agreed on the established concept of

"universality of bankruptcy," which stands for the proposition that foreign bankruptcy

decisions are enforceable in Luxembourg with the same capacity, enforceability, and

effect as their respective jurisdiction, so long as those foreign decisions are not

fundamentally at odds with Luxembourg notions of public order.  The experts also agree

that one exception to this principle is when a foreign receiver engages in actual

enforcement actions, in which case an exequatur, also known as an enforcement order or

a domestication order, must first be obtained.[27]  Significantly, not only do the experts

agree on this exception, but they relied on the same doctrine in support of their opinions,

namely a treatise, "Bankruptcy in Luxembourg's Private International Laws," by Patrick

Kinsch (the "Kinsch Article").[28]  The fact that they arrived at different legal conclusions

based on the Kinsch Article is not so much a reflection of the unsettled nature of the law,

but their different interpretations and application of Luxembourg law as stated in the

Kinsch Article.[29]

---

[27] Ms. Watté and Mr. Wurth agree that, under Luxembourg law, the principle of territoriality may be applicable under certain circumstances and the concept of retroactivity is virtually unknown.

[28] Mr. Wurth's opinion that the Shareholder Resolution did not constitute an act of enforcement is consistent with the Luxembourg Court's finding in the July 1, 2010 Order that Marengère has not justified that the Liquidator committed an act of force or an illegal act in exercising his right of revocation by way of the Shareholder Resolution.

[29] For example, in Paragraph 23 of the Declaration of Marleen Watté-Bollen, Ms. Wattés relied on the Kinsch Article (Pl. Ex. 2.) and asserts two points: 1) Luxembourg has a territoriality exception to the principle of universality of bankruptcy and 2) the U.S. follows the territoriality principle.  Ms. Watté's second assertion is unsupported by the Kinsch Article.  The relevant section of the Kinsch Article discusses Luxembourg's territoriality exception to the universality principle.  In support of the proposition that such a legal premise is valid law in Luxembourg, Kinsch cites to a Luxembourg case which held that since the U.S. follows the territoriality principle, Luxembourg will not apply the principle of universality to U.S. bankruptcy cases.  However, in footnote 101 of the Article, Kinsch points out that, although this particular Luxembourg case is instructive in explaining the territoriality exception, the court's finding that territoriality is the governing principle of the U.S. is questionable because it is based solely on a non-U.S.

A crucial issue in this dispute is whether the Bozel Governance Agreement is controlling or void as contrary to public policy under Luxembourg law.  On this point, both Mr. Wurth and Ms. Watté agree that, as a matter of general principle, shareholders' right to appoint and revoke directors is fundamental and absolute due to its public nature. (Hr'g Trans. 68, June 23, 2010; Wurth Decl., Pl's Trial Brief Ex. A ¶¶ 19-20.)  Based on this settled principle, Mr. Wurth opines that the Bozel Governance Agreement is not enforceable as a matter of Luxembourg public policy because it has the effect of divesting shareholders' absolute right to remove Marengère as the *administrateur-délégué* of the Debtor.  (Wurth Decl., Pl's Trial Brief Ex. A. ¶ 22.)  In support of his opinion, Mr. Wurth cites two Luxembourg court decisions, one of which held that a provision requiring an advance notification period of one year before a shareholder could terminate a director was annulled, while the other held that a provision requiring an advance notification of six months and an indemnification in the amount of €51,048.60 is annulled.  (Suppl. Wurth Decl., Pl. Reply Trial Brief Ex. I (Ex. D.))  The rationale underlying both court decisions is that such provisions obstruct the principle of *ad nutum* revocation and unduly limit shareholders from exercising such right. (*Id.*)  The Defendants argue that these two cases are inapplicable because they relate to contract provisions that are different from the contract provisions at issue in this case.  While it is true that the provisions in the two cases relate to notice periods and not a shareholder's waiver of right to revoke directors in the event of bankruptcy, the underlying legal

---

practical guide in Belgian law written in the 1930s.  To demonstrate the court's unsubstantiated finding on this point, Kinsch cited to a hornbook ("Scoles") written in the U.S., which described U.S. bankruptcy proceedings as having "universal applicability."  Scoles further states that, although nations may not recognize the international effect of a U.S. bankruptcy proceeding, Belgium and Luxembourg would grant such recognition.  Therefore, Ms. Watté's assertion that the principle of territoriality is the governing principle in the U.S., insofar as it relied on Kinsch, was based on an incomplete reading of the Kinsch Article.

principle is applicable to the dispute at issue.  In the two decisions, the Luxembourg

courts clearly articulated the holding that provisions in a private shareholder agreement,

to the extent that they divest shareholders' right of *ad nutum* revocation, are annulled.  In

fact, the relevant provisions in the Bozel Governance Agreement, which suspends a

shareholder's right to remove Marengère as the *administrateur-délégué* during the

pendency of Wellgate's insolvency proceeding is a more severe derogation of the right of

*ad nutum* revocation than the notice period provisions in the Luxembourg cases cited by

Mr. Wurth.

Despite acknowledging the settled principle of shareholder's right of *ad nutum*

revocation, Ms. Watté nonetheless opines that the law in this area is unsettled because

private shareholder agreements, in general, are accepted by Luxembourg courts. (Hr'g

Trans. 62, June 23, 2010.)  She also contends that since there has been no case law with

respect to provisions in shareholder agreements relating to the revocation and

appointment of directors, it is uncertain how a court would rule in this case. (*Id*. at 69.)

In forming this conclusion, Ms. Watté points to no contrary legal principle in

Luxembourg jurisprudence.[30]

In light of the evidence presented, the Court finds Mr. Wurth's expert opinion to

be credible and the Luxembourg Court's July 2010 Order amply demonstrates the

validity of Mr. Wurth's presentation of Luxembourg corporate law as applied to the facts

of this case.  Significantly, the July 1, 2010 Order found that there is no need to take into

---

[30] *Jurisprudence constance* is defined by the experts as consistent ruling by the High Court of Luxembourg for an extended period of time.  The Court finds that, contrary to the Ms. Watté's opinion, *jurisprudence constance* could not be the equivalent of what is considered settled law in Luxembourg just as an area of the law is not necessarily unsettled in the U.S. simply because the Supreme Court has not ruled on the issue.

account the Bozel Governance Agreement to the extent that it contradicts the sole

shareholder's right of free revocation.

Thus, contrary to the Defendants' assertion that Luxembourg law at issue is

completely uncertain, complex, and difficult to interpret, the Court finds that the record

sufficiently establishes applicable and settled legal principles of Luxembourg law for this

Court to adjudicate the dispute in the Adversary Proceeding.  Therefore, the difficulty

and unsettled nature of applicable law factor also weighs against abstention.

*C.  The Court's Interest in the Adversary Proceeding*

While Luxembourg has an interest in the corporate governance matters relating to

an entity incorporated under the law of its jurisdiction, that interest is outweighed by this

Court's interest in this particular Adversary Proceeding because the resolution of the

dispute is quintessential to the administration of the Debtor's Chapter 11 case.  This is

particularly true in light of the inconsistent positions that the Defendants have taken by

choosing this forum for the Debtor's Chapter 11, while urging this Court to abstain and in

effect delay resolution of a central issue that must be resolved before the Debtor could

effectively reorganize.  As the Debtor purposefully availed itself of the protection of the

U.S. Bankruptcy Code, it must be held accountable for its choice of forum and, in good

faith, fulfill its obligation in administering the Chapter 11 case.

In light of the background and procedural posture of this case and the Debtor's

voluntary filing of its Chapter 11 case, this Court, rather than the Luxembourg Court has

a greater interest in timely adjudicating the Adversary Proceeding.

**International Comity**

Alternatively, the principle of international comity is defined by the Supreme

Court:

> "Comity" in the legal sense, is neither a matter of absolute obligation, on
> the one hand, nor of mere courtesy and good will, upon the other. But it is
> the recognition which one nation allows within its territory to the
> legislative, executive or judicial acts of another nation, having due regard
> both to international duty and convenience, and to the rights of its citizens
> or of other person who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

Under this principle, a district court, in its discretion, may decline to exercise

jurisdiction under certain circumstances in deference to the laws and interest of a foreign

nation. *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 543

n.27 (1987). Although the exact contours of this doctrine are rather vague, courts have

understood the underlying goal of international comity to be "maintaining amicable

working relationships between nations." *J.P. Morgan Chase Bank v. Altos Hornos de

Mexico S.A. de C.V.,* 412 F.3d 418, 423 (2d Cir. 2005).[31]

The 11th Circuit has articulated three goals upon which a court's analysis of

international comity should be guided by: "(1) a proper level of respect for the acts of our

fellow sovereign nations . . . . (2) fairness to litigants; and (3) efficient use of scarce

judicial resources." *Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1518 (11th

Cir. 1994). On the other hand, the doctrine is inappropriate if extending comity to a

foreign proceeding would be contrary to the public policy of the United States. *See

Pravin Banker Assocs. v. Banco Popular del Peru,* 109 F.3d 850, 854 (2d Cir. 1997);

---

[31] Comity "is not an imperative obligation of courts but rather is a discretionary rule of 'practice, convenience, and expediency.'" *J.P. Morgan,* 412 F.3d at 423 (quoting *Pravin Banker Assocs. v. Banco Popular del Peru,* 109 F.3d 850, 854 (2d Cir. 1997); *United States v. Nippon Paper Indus. Co.,* 109 F3d 1, 8 (1st Cir. 1997) ("Comity is more an aspiration than a fixed rule, more a matter of grace than matter of obligation").

*Cunard S.S. Co. v. Salen Reefer Servs. AB,* 773 F.2d 452, 457 (2d Cir. 1985) (finding that in order to grant comity, a court must determine that the foreign jurisdiction abide by fundamental standards of procedural fairness).

With respect to international comity, there is no evidence that the Court's adjudication of this case would offend comity of courts or negatively impact the amicable working relationship between the U.S. and Luxembourg. In fact, it is not uncommon for U.S. courts to apply foreign law under the appropriate circumstances. *See e.g.*, *Bigio v. Coca-Cola*, 448 F.3d 176 (2d Cir. 2006); *United States v. Schultz*, 333 F.3d 393 (2d Cir. 2003); *Karaha Bodas Co., v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70 (2d Cir. 2002).

Neither is it inequitable nor burdensome for the Defendants to defend the Adversary Proceeding in this Court since they must regularly appear before this Court to administer the Debtor's Chapter 11 case. To the contrary, it would be inequitable to the Plaintiffs and a waste of judicial resources for this Court to abstain at these late stages of the Adversary Proceeding when trial pleadings in Luxembourg will not even be filed in the Commercial Proceeding until October 2010.

For the foregoing reasons, the Court will not exercise permissive abstention in this case. As the Court is not abstaining, the Debtors' request for a stay of the Adversary Proceeding pending resolution of the Luxembourg Proceedings is moot.

**Conclusion**

In sum, the Court finds that (1) Chapter 15 is not applicable in this case; hence, the Liquidator has standing to commence the Adversary Proceeding; (2) Crastvell has standing to intervene in the Adversary Proceeding pursuant to § 1109; (3) the Court has

personal jurisdiction over Marengère; thus, the Defendants' motion to dismiss the

Plaintiffs' claims against Defendant Marengère is DENIED; (4) upon considering the

totality of the circumstances, the Court finds that the facts of this case weigh against

abstention.  Therefore, the Court will retain jurisdiction of the Adversary Proceeding, and

the Defendant's Motion for Permissive Abstention on the grounds of § 1334(c)(1) and

comity, or in the alternative, a stay of the Adversary Proceeding pending resolution of the

Luxembourg Proceedings, is DENIED.

Counsel for all parties are directed to appear in person before the Court in a status

conference regarding the Adversary Proceeding on July 22, 2010 at 12:00pm.


Dated: New York, New York
       July 20, 2010



                        s/Arthur J. Gonzalez
                        ARTHUR J. GONZALEZ
                        CHIEF UNITED STATES BANKRUPTCY JUDGE