UNITED STATES BANKRUPTCY COURT   FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
                                                                  :
In re                                                           :    Chapter 11
                                                                  :
       BOZEL S.A.,                           :
                                                                  :    Case No. 10-11802 (AJG)
                                                                  :
                  Debtor.                 :
                                                                  :
--------------------------------------------------------
                                                                  :
ANDREW BICKERTON as Liquidator of   :
                                                                  :
Wellgate International Limited and               :
                                                                  :    A.P. No. 10-03249 (AJG)
CRASTVELL TRADING LIMITED,             :
                                                                  :
                Plaintiffs,                :
                                                                  :
                  v.                         :
                                                                  :
BOZEL S.A. and MICHEL MARENGÈRE,  :
                                                                  :
                Defendants.             :
                                                                  :
--------------------------------------------------------

**OPINION REGARDING ADVERSARY PROCEEDING SEEKING
DECLARATORY RELIEF AND PERMANENT INJUNCTION AGAINST THE
DEBTOR'S FORMER DIRECTOR**

**APPEARANCES:**

DAMON MOREY LLP
Proposed Attorneys for the Debtor, Debtor-In-Possession, and Defendant Bozel S.A.
The Avant Building, Suite 1200
200 Delaware Avenue
Buffalo, NY 14202
  By:   Daniel F. Brown, Esq.
           William F. Savino, Esq.

Joseph G. Makowski, Esq.
Attorney for Defendant Michel Marengère
420 Franklin Street

Buffalo, NY 14202

GREENBERG TRAURIG, LLP
Attorney for Andrew Bickerton
as Liquidator of Wellgate International Limited, Plaintiff
200 Park Avenue
New York, NY 10166
By:   Allen G. Kadish, Esq.
      Adam Dembrow, Esq.

1221 Brickell Avenue
Miami, FL 33131
By:   Mark D. Bloom, Esq. (admitted *pro hac vice*)
      Paul J. Keenan, Esq. (admitted *pro hac vice*)

KLESTADT & WINTERS, LLP
Attorneys for Crastvell Trading Limited, Plaintiff
292 Madison Avenue, 17th Floor
New York, NY 10017
By:   Tracy L. Klestadt, Esq.

ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE

   Before the Court is a Complaint filed by plaintiffs Andrew Bickerton (the "Liquidator") and Crastvell Trading Limited ("Crastvell," together with the Liquidator, the "Plaintiffs") against Bozel S.A. (the "Debtor") and Michel Marengère ("Marengère," together with the Debtor, the "Defendants") seeking, (1) a judicial determination that the Liquidator, as the Debtor's sole shareholder, has the authority to take any and all actions consistent with that position, including but not limited to removing Marengère from his position as the Debtor's sole director and directing the Defendants to turn over to the Liquidator books, records, and documents and submit to the Liquidator's authority; (2) an order granting a permanent injunction pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 7065(a) restraining and enjoining Marengère and any individual or entity controlled or directed by him, (i) from exercising, or attempting to exercise, any control over the assets

2

of the Debtor or any of its non-debtor subsidiaries, (ii) from interfering in any way with the rights of the Liquidator, including the Liquidator's rights to assert control over the assets of the Debtor and of any of its non-debtor subsidiaries, and (b) directing Marengère, and any individual or entity controlled or directed by him, to turn over to the Liquidator any books and records of the Debtor and of any of its non-debtor subsidiaries. The Court assumes the parties' familiarity with the facts of this case.[1]

**Issues**

The Court will discuss each of the following key issues below: (1) whether the Shareholder Resolution is void *ab initio* under Luxembourg law because it is contrary to the Bozel Governance Agreement; (2) whether the BVI Order is required to be domesticated in Luxembourg; and (3) whether the Shareholder Resolution is a valid exercise of the Liquidator's powers within the scope of the BVI Order.

**Rule 44**

As the legal issues before the Court in this Adversary Proceeding relate to interpretation and application of foreign law, Federal Rule of Civil Procedure 44.1 applies:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rule of Evidence. The court's determination must be treated as a ruling on a question of law.
>
> F. R. Civ. P. 44.1.

---

[1] The background and procedural history of the Adversary Proceeding are discussed in greater detail in the Court's opinion entitled, "Opinion Regarding Defendants' Motion For Permissive Abstention And/Or a Stay of the Proceedings Pending Resolution of Luxembourg Proceedings," entered on July 20, 2010, Docket No. 25 (the "Abstention Opinion"). Further, unless otherwise defined herein, the capitalized terms are defined in the Abstention Opinion.

3

Courts have discretion when interpreting foreign law under Rule 44.1. *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 395 (S.D.N.Y. 2007); *Haywin Textile Prod., Inc.*, 137 F. Supp. 2d 431, 435 (S.D.N.Y. 2001). In making rulings regarding foreign law, courts have employed various methods: they have considered the plain text of applicable foreign law, *Adelhamid*, 515 F. Supp. 2d at 396; made assumptions regarding the interpretation of translated foreign law sources, *see Argyll Shipping Co. v. Hannover Ins. Co.*, 297 F. Supp. 125, 127 (S.D.N.Y. 1968); considered expert affidavits submitted by parties, *see Faggionato v. Lerner*, 500 F. Supp. 2d 237, 244-45 (S.D.N.Y. 2007); evaluated experts' credibility, *id.;* assessed experts' opinions and the basis of such opinions as supported by the foreign country's civil law, cases, treatises, and logic. *see Curtis v. Beatrice Foods Co.*, 481 F. Supp. 1275, 1285 (S.D.N.Y. 1980), *aff'd*, 633 F.2d 203 (2d Cir. 1980).

In reaching its findings regarding relevant Luxembourg and BVI law, the Court has considered statutes, case law, treatises, and other secondary sources submitted by the parties. The Court has also considered the various opinions of experts on Luxembourg law and BVI law based on the credentials of the experts, the basis of their legal conclusions, and the overall logic and consistency of their opinions.

**Governance Agreement**

The Defendants contend that the Shareholder Resolution is void *ab initio* because it is contrary to the terms of the Bozel Governance Agreement under which the Liquidator, as the shareholder of the Debtor, is bound. Clauses 4.1 and 4.2 of the Bozel Governance Agreement, *inter alia,* provide that shareholders shall take no part in the

4

control, management and removal of the *Administrateur Délégué* or any manager or employee, except in the event of death or permanent disability of the *Administrateur Délégué*. Clause 7.1, which is referred to as the "circuit breaker provision" generally provides that the bankruptcy of a shareholder or the majority of shareholders constitutes a default on the part of the shareholders, and immediately suspends the rights of the shareholder or the majority of the shareholders until such default is cured. The Plaintiffs contend that the relevant provisions in the Bozel Governance Agreement are void as a matter of Luxembourg public policy because they divest a shareholders' fundamental right to remove and appoint directors. The general principle of a shareholder's absolute right to remove and appoint directors *ad nutum* is well supported by Luxembourg case law and expert testimonies by both Mr. Wurth and Ms. Watté as presented before the Court.[2] Further, in the July 1, 2010 Order, the Luxembourg court found that shareholders' power to remove directors at will is absolute and cannot be negated by private agreements, such that "there is no room to apply" the provisions of the Bozel Governance Agreement to the extent that they interfere with the power of the Debtor's shareholder, in this case, the Liquidator, to remove directors at will.[3]

The Defendants challenge the references to the cases cited by Mr. Wurth and assert that because the cases were excerpts put together by a law clerk at the court's library, they do not accurately reflect the law and findings of the court in those cases.

---

[2] Both Ms. Watté and Mr. Wurth agree that, as a matter of general policy in Luxembourg, shareholders' right to appoint and revoke directors is fundamental and absolute due to its public nature. (Hr'g Trans. June 23, 2010 at 68; Wurth Decl., Pls' June 23, 2010 Ex. 7 ¶¶ 19-20.) In Mr. Wurth's Supplemental Declaration, he cited to Luxembourg cases that articulated this principle. (Pls' June 23, 2010 Ex. 8, Wurth's Suppl. Decl. Ex. D.)

[3] Although not binding, courts have considered prior case law when interpreting foreign law in a civil law country. *See Kunstsammlungen Zu Weimar v. Elicofon*, 536 F. Supp. 829, 839 (E.D.N.Y. 1981); *Instituto Per Lo Sviluppo Economico Dell' Italia Meridionale v. Sperti Products, Inc.*, 323, F. Supp. 630, 635 (S.D.N.Y. 1971). Similarly, although the July 1, 2010 Order is not binding on this Court, it is relevant in assisting this Court's interpretation of applicable Luxembourg law to the facts of this case.

5

There is no reason for the Court to believe that the excerpts did not accurately represent the holdings of those cases, as not only do those two cases stand for the same proposition as the July 1, 2010 Order, but the analysis and language found in all three opinions on this issue are substantially the same. Further, if the Defendants believed that the excerpts of those decisions were taken out of context and did not accurately reflect the law and findings of the courts, they made no effort, prior to or after the introduction of those excerpts into evidence before the Court, to obtain the full opinions to support their argument.

As a general matter, the Court finds Mr. Wurth to be a credible witness and his opinion well-supported. His opinion on this issue and Luxembourg law is consistent with the findings of the Luxembourg court as articulated in the July 1, 2010 Order and Luxembourg case law that addresses the same general issue – restriction of shareholders' rights to remove a director. On the other hand, the Court finds Ms. Watté was not a credible witness as she failed to, on multiple occasions, provide a reasonable basis for her legal conclusions. Although Ms. Watté acknowledges that shareholders' right to appoint and revoke directors is fundamental and absolute, she opines that the Bozel Governance Agreement should nonetheless control because shareholder agreements are generally accepted by Luxembourg courts (Hr'g Trans. June 23, 2010 at 62.) However, in making this assertion, Ms. Watté did not point to a single instance where an agreement such as the Bozel Governance Agreement was upheld or even considered by a Luxembourg court.[4] Nor did she provide any decision of the Luxembourg court that analytically

---

[4] Mr. Wurth testifies that it is atypical for a company with only one shareholder and one director to also appoint an *administrateur délégué* because an *administrateur délégué* is generally appointed for daily management of a company where there are multiple directors on the board. (Hr'g Trans. June 23, 2010 at 164-65.) The Court observes that the Bozel Governance Agreement, signed by Marengère in his

6

would support her position. Further, Ms. Watté provided no contrary legal principle on point to rebut the case law cited by Mr. Wurth, which clearly articulated the proposition that private agreements that divest shareholders' *ad nutum* right to appoint and revoke directors are null.

In sum, the Court finds that the Bozel Governance Agreement is void against Luxembourg public policy to the extent that it divests the Liquidator's right, as the Debtor's sole shareholder, to remove Marengère from his position as the Debtor's director. Consequently, the Shareholder Resolution is not void *ab initio* on the basis that it is contrary to the Bozel Governance Agreement and is, therefore, enforceable as a matter of Luxembourg law.

**Domestication**

Both Luxembourg law experts opine that Luxembourg follows the principle of universality of bankruptcy, which means that foreign bankruptcy court orders are enforceable in Luxembourg, with the same capacity, enforceability and effect as they would have in their respective foreign jurisdictions, so long as those orders are not fundamentally at odds with Luxembourg's notions of fair play and substantial justice. Thus, foreign bankruptcy orders, such as the BVI Order, are recognized in Luxembourg without a domestication order unless the foreign receiver engages in an actual enforcement action. As discussed in the Kinsch Article,[5] "the concept of enforcement action must be taken in a strict sense." (Pls. June 23, 2010 Ex. 2, the Kinsch Article at ¶ 26). Kinsch continues "…at the very least in bankruptcy cases – there is an 'enforcement

---

representative capacities of both Wellgate and Bozel S.A. as well as in his individual capacity as the appointed *administrateur délégué,* seems to have no other conceivable purpose but to keep Marengère in control of the Debtor.

[5] Mr. Wurth and Ms. Watté both agree that the Kinsch Article is an authoritative and reliable treatise.

action' only if the foreign bankruptcy receiver wishes to obtain the *forced execution* of the bankruptcy judgment on the assets located in Luxembourg." (*Id.*) "Forced execution," in turn, is defined as involving intervention of public force. (*Id.* at n.120.) Based on the record and consistent with the Luxembourg court's finding in the July 1, 2010 Order,[6] the Court finds that the Liquidator's exercise of his corporate governance rights by way of the Shareholder Resolution does not constitute an enforcement action because the Liquidator's conduct did not involve intervention of public force with respect to the Debtor's assets in Luxembourg. Instead, the Luxembourg court, in the July 1, 2010 Order, characterized the Shareholder Resolution as a "purely protective measure." There is also no evidence that the Shareholder Resolution is against Luxembourg's notions of fair play and substantial justice.

Further, Ms. Watté asserts that the principle of territoriality is another exception to the principle of universality of bankruptcy, whereby if a foreign bankruptcy judgment was pronounced in a country in which the laws granted only a strict territorial scope to bankruptcy judgments pronounced by its own courts, then the effect of that foreign bankruptcy judgment may only be territorial.[7] (Def's Trial Brief Ex. 2, Watté Decl. at ¶¶ 23-4.) The Defendants assert that the BVI is a territoriality jurisdiction; therefore, the BVI Order would not be automatically recognized and must first obtain domestication by a Luxembourg court.

---

[6] In the July 1, 2010 Order, the Luxembourg court found that "prior enforcement is only required when it is necessary to carry out actual acts of enforcement, that is collection measures against the person or assets of the bankrupt party . . . in this case, the sole shareholder of BOZEL SA has implemented a purely protective measure . . . so that WELLGATE LTD could be validly represented by its only body following the liquidation judgment of March 9, 2010, without that this judgment could be made enforceable in Luxembourg at the time of the contested decision."

[7] The concept of territoriality was mentioned in the Kinsch Article and cited by Ms. Watté in her declaration and testimony. However, it does not appear to be as generally accepted in Luxembourg as the legal principle of "universality of bankruptcy."

8

On the issue of whether BVI is a territoriality jurisdiction, the Defendants offer the declaration and testimony of Ms. Deborah Hrbek ("Ms. Hrbek") and the Plaintiffs offer the declaration and testimony of Mr. Gerard St. Clair Farara Q.C. ("Mr. Farara"). The Court has assigned little weight to Ms. Hrbek's opinion considering that her background and experience in BVI law is so lacking that the Court has serious doubts as to whether her knowledge is substantiated enough in these areas to add much value to the Court in its understanding and interpretation of the relevant issues. Throughout the course of her career, Ms. Hrbek has practiced in the BVI for approximately sixteen months, from May of 1999 through September of 2000, and did not practice in BVI after the adoption of the BVI Insolvency Act.[8] (Hr'g Trans. June 28, 2010 at 312, 319-20.) Ms. Hrbek is the founding and managing partner of the law firm, Hrbek Law, LLC. According to its website, Hrbek Law, LLC specializes in "arts and entertainment law, technology law and business law, matrimonial law and family law, and mediation and collaborative law." (Hr'g Trans. June 28, 2010 at 313.) Ms. Hrbek acknowledges that BVI law and insolvency law are not areas of specialization that are offered by her law firm. (*Id.* at 314.) Ms. Hrbek states in her declaration that she maintains close professional relationships and correspondence with her BVI solicitor and barrister colleagues and regularly receives international updates from UK law firms regarding BVI law. However, such informal, sporadic, and unverified ways of obtaining knowledge about BVI insolvency law could hardly justify qualifying someone as an expert in an area of the law. In contrast, Mr. Farara has been a practicing attorney in the BVI since 1977.

---

[8] Mr. Farara testified about at least two main changes in BVI insolvency law since the adoption of the Insolvency Act 2003. First, the BVI Insolvency Act abolished the distinction between offshore companies, defined as companies that did not own assets or conduct any business in the BVI, and companies that did own assets and conduct business within the BVI. Second, the Act also incorporated an applicable set of insolvency rules. (Hr'g Trans. June 28, 2010 at 338.)

He has practiced extensively before all courts in the BVI and was designated as the Queen's Counsels in 1996.[9] For over twenty-two years, approximately forty percent of Mr. Farara's practice in the BVI has been in the area of insolvency law. (*Id.* at 337.) The Court has given substantial weight to Mr. Farara's opinion, not only on the basis of his substantial background and experience in BVI insolvency law but also in light of the overall support and logic of his legal conclusions.[10]

Ms. Hrbek testified that the BVI court in issuing the BVI Order did not intend for the order to have extraterritorial effect. She asserts that the BVI Order has no legal effect beyond the borders of the BVI except to the extent that a person attempts to enforce that order in a non-BVI jurisdiction. However, in her declaration, Ms. Hrbek also states that section 175(1)(a) of the BVI Insolvency Act confers upon the Liquidator custody and control of the assets of Wellgate, and section 2(1) describes assets to include property "wherever situated," which includes the shares of a foreign corporation. These assertions are contradictory since section 175(a)(1) vests the assets and property of Wellgate in the hands of the Liquidator, and all of Wellgate's assets are located outside of the BVI. It is, therefore, inconceivable that the BVI court intended for the BVI Order to have legal effect solely within the borders of the BVI.[11] Further, as discussed in more detail herein,

---

[9] Queen's Counsel is a distinction to practicing attorneys at the bar of eminence conferred by the Queen. (*Id.* at 340.)

[10] The Defendants raise certain issues regarding the declaration and testimony of Mr. Wurth and Mr. Farara for lacking in neutrality and failing to comply with certain BVI Civil Procedural Rules (Def's Trial Brief, Ex. 1, Hrbek Declaration at ¶¶ 27-31.) First, Rule 44, which requires no such proof of independence and neutrality, applies to the expert declaration and testimony of Mr. Wurth and Mr. Farara, not BVI Civil Procedural Rules. Second, Mr. Farara represents the Liquidator, who is an officer of the court rather than an adversary party in litigation. Thus, Mr. Farara's expert testimony does not raise the same conflict concerns as would the testimony of an attorney who represents an adversary party in litigation. Finally, the Court notes Ms. Watté, the Defendants' Luxembourg law expert also represents the Defendants in the Luxembourg Proceedings.

[11] Mr. Farara also testifies the BVI economy relies heavily on the financial services sector which is based primarily on off-shore entities that do not conduct business or own assets in the BVI. If the BVI Insolvency Act was intended to confer no extraterritorial effect, it would have a devastating deterrent effect

10

Ms. Hrbek's position in this regard highlights her lack of expertise as to BVI insolvency law and its application.

Mr. Farara, on the other hand, testifies that BVI liquidation orders are intended to have extraterritorial effect. He stated "and this is in keeping with the basic principle of English law, that the winding up of a company that is incorporated in the particular country where the winding up order is made, that winding up relates not just to the assets and affairs within that country, but anywhere." (*Id.* at 349.) In light of the plain text of the provisions in the BVI Insolvency Act that confers extraterritorial effect and the large number of off-shore companies in the BVI, the Court finds that the BVI is not a territorial jurisdiction. Therefore, the exception of territoriality is also not a basis under which a domestication order is required before the BVI Order could obtain recognition in Luxembourg.

In conclusion, the Court finds that the BVI Order is effective by its own force in Luxembourg and domestication is not required because the Shareholder Resolution does not constitute an enforcement action and the force and effect of BVI insolvency law are not restricted to the borders of the BVI.

**Shareholder Resolution**

*Retroactivity*

The Liquidator was duly appointed by a BVI court in Wellgate's insolvency proceeding, and section 175(1)(a) of the BVI Insolvency Act vests him with the custody and control over the assets of Wellgate upon the issuance of the BVI Order. Under BVI law, the ownership of shares of stock is considered an "asset" within the meaning of the

---

on foreign companies from incorporating in the BVI. (Hr'g Trans. June 28, 2010 at 352-53.) In essence, if that were true, a liquidator appointed in a BVI insolvency proceeding, such as Mr. Bickerton, would have no practical value.

statute, which means upon his appointment, the Liquidator has the right to exercise control over assets – namely the shares of stock in the Debtor, a wholly-owned subsidiary of Wellgate. Therefore, the Liquidator has established that he has a statutory right under BVI law to exercise control over the stock of the Debtor. The Defendants contend that even if the Liquidator had control over the stock of the Debtor, the Shareholder Resolution, pursuant to which the Liquidator appointed himself as the director of the Debtor in place of Marengère, is outside the scope of what was authorized under the BVI Order because the Liquidator sought to give such declaration retroactive effect. By importing certain concepts from contract law, the Defendants argue that the Shareholder Resolution does not have prospective effect because, (1) there is no severability clause stating that the rest of the document is enforceable even if certain clauses have been stricken as unenforceable; (Hr'g Trans. June 23, 2010 at 166-68.) (2) the concept of "blue pencil," whereby a court could strike out certain clauses within an agreement, but cannot change the "duration" of a provision pertaining to a time period. (*Id.* at 168-70.) The Court is not persuaded by the Defendants' argument that if the Shareholder Resolution was found to have no retroactive effect, it would not have prospective effect simply because there is no severability clause. Severability clauses are typically found in private agreements and such clauses are not typically found in shareholder resolutions.[12] A corporate resolution is more akin to legislation or rules enacted by a governing body, in which it is not uncommon for the legislation or rule containing a retroactive provision to retain prospective effect even if that (retroactive) provision is later stricken as

---

[12] The relief sought by the Defendants in the Summary Proceeding for the suspension of the Shareholder Resolution was based upon a number of theories. None of those theories included an argument that the Shareholder Resolution should be suspended because it had retroactive effect without a severability clause.

12

unenforceable. Further, the Shareholder Resolution is not an agreement that requires a meeting of the minds and a bargained-for-exchange between two private parties; where if a material clause were stricken, one could argue that there would no longer be a meeting of the minds regarding the agreement. Therefore, the Defendants' arguments pursuant to contract law theories are inappropriate as applied to the Shareholder Resolution.

In sum, the Court finds that the retroactive portion of the Shareholder Resolution does not nullify the entire document; therefore, the Shareholder Resolution has prospective effect beginning on April 7, 2010.

*Scope of the Liquidator's Authority Pursuant to the BVI Order*

<u>Sanction to Commence, Continue, Defend in Proceedings</u>

The Defendants contend that the Shareholder Resolution falls outside the scope of power conferred upon the Liquidator by the BVI Order because the Liquidator failed to obtain sanction of the BVI court as required under ¶ 3 of the BVI Order.

Paragraph 3 of the BVI Order states, "the powers set out at paragraph 2(i)-(v) shall be exercisable only with the sanction of the court. The Liquidator may exercise all other powers set out in paragraph 2 without the sanction of the Court."

Paragraph 2 of the BVI Order, in relevant parts, provides:

2. That the Liquidator shall have all the powers necessary to carry out the functions and duties of a liquidator under the BVI Insolvency Act, 2003 (the "Act"), including the following. . .

    (iv) Power to commence, continue, discontinue or defend any action or other legal proceedings in the name and on behalf of the Company in the British Virgin Islands or elsewhere

    (v) Power to carry on the business of the Company so far as may be necessary for its beneficial liquidation.

13

On June 3, 2010, the Liquidator filed an ex parte application (the "Ex Parte Application") before the BVI court seeking retroactive sanction to participate in, *inter alia*, the Debtor's Chapter 11 proceeding, this Adversary Proceeding, and the two Luxembourg Proceedings.[13] The BVI court entered an order, dated June 4, 2010 ("BVI Retroactive Order"), granting the Liquidator permission to, *inter alia*, take steps to participate in litigation relating to Wellgate and the Debtor in various jurisdictions, including the Debtor's Chapter 11 case, the Adversary Proceeding, and the two Luxembourg Proceedings.

Ms. Hrbek opines that a BVI court does not have the power to confer retroactive authority, as requested in the Ex Parte Application, and that the Liquidator's *ultra vires* action in participating in various litigation pending in the U.S., Luxembourg, and the U.K. "cannot be undone, or validated retroactively, by virtue of the [Retroactive Order] or otherwise." (Hrbek Supp. Decl. ¶ 10.) In making this assertion, Ms. Hrbek states that she relied on the "common law principles of administrative law" but does not explain how that principle is applicable in this case, nor did she cite to any BVI law, statute, case law, treatise, or rule of procedure in support of her opinion. (Hr'g Trans. June 28, 2010 at 331-32.) At the June 28, 2010 hearing, Ms. Hrbek also seemed to argue that the BVI Retroactive Order is unenforceable because it is still subject to appeal. The Court will give but little weight to Ms. Hrbek's opinion as she has only practiced in the BVI for sixteen months, over a decade ago, and provided no applicable legal basis for her opinion that a BVI court has no power to issue the BVI Retroactive Order. Contrary to Ms. Hrbek's view, Mr. Farara opines that, as an attorney who has regularly appeared in BVI courts over the last 30 years, it is not unusual for BVI courts to grant retroactive effect to

---

[13] A draft order was attached along with the Ex Parte Application.

14

their prior orders. (*Id.* at 344.)[14] Courts have the inherent power to interpret and modify its orders, and the Defendants have offered no legal basis or theory for this Court to find otherwise. The fact that a court order is subject to appeal does not render it unenforceable. As a matter of comity, unless and until the BVI Retroactive Order is set aside by the BVI court or reversed by a higher BVI court, the Court will recognize the BVI Retroactive Order as it is issued by a court of a competent jurisdiction.

With respect to Ms. Hrbek's characterization of the Liquidator's participation in pending litigation as an *ultra vires* act, Mr. Farara explained, and the Court finds convincing, that although the Liquidator's conduct may have failed to comply with a particular provision of the BVI Order, that does not make it an *ultra vires* act because the BVI Insolvency Act specifically confers the power on a court appointed liquidator to pursue legal proceedings. (*Id.*)

Further, at the June 28, 2010 hearing, the Defendants pointed to differences between the draft order attached in the Ex Parte Application and the BVI Retroactive Order as entered by the BVI court and implied that the BVI court was perhaps unaware that it was granting the Liquidator's request for relief retroactively. What the Defendants are in effect requesting is for this Court to find either misrepresentation by the Liquidator's counsel or gross oversight by the BVI court in issuing the BVI Retroactive Order. The Defendants' theory is purely speculative and offensive to the Liquidator's counsel and the BVI court. There is no evidence to suggest the Liquidator's counsel, a reputable BVI attorney of over 30 years, has misrepresented to the BVI court any aspect of the relief sought in the Ex Parte Application. In fact, the Ex Parte Application

---

[14] An example that Mr. Farara gave to demonstrate BVI courts' power to grant retroactive sanctions is where a party has breached the rules of court by not filing a document within a specified time period and courts would sometimes extend that time period retroactively. (Hr'g Trans. June 28, 2010 at 345.)

15

discussed, in great detail, the facts and the procedural history of the various proceedings relating to Wellgate and the Debtor, as well as the commencement dates and nature of the litigation pending in various jurisdictions. At the conclusion of ¶ 16 of the Ex Parte Application, the Liquidator stated, "specifically in relations to the New York proceedings, I seek the sanction of the court retroactively to 28th April, 2010." (Farara Supp. Decl. Ex. B at ¶ 16.) He continued in ¶ 17, "I apologize to the court for not having made this application before or in advance of the filing of the Adversary Proceeding in New York." (*Id.* at ¶ 17.) A court, in reviewing the Ex Parte Application, could not have been unaware that the Liquidator was seeking court sanction retroactively. The Court presumes the BVI court has reviewed the Ex Parte Application and granted the appropriate relief as stated the BVI Retroactive Order. Any challenge to the BVI Retroactive Order should have been filed before the BVI court following the receipt of actual notice of that order by the Defendants. However, the Defendants took no such action.

For the foregoing reasons, the Court, pursuant to comity among courts, grants recognition to the BVI Retroactive Order.

Sanction to Carry On the Business of the Company

Ms. Hrbek also opines that the Shareholder Resolution is invalid because it constitutes the Liquidator's exercise of his "power to carry on the business" of [Wellgate] so far as may be necessary for its beneficial liquidation" and requires sanction from the BVI court. On this point, Mr. Farara explains that in the BVI, holding companies, such as Wellgate, which operate no business in BVI and exist solely as shareholders of other companies do not "carry on business" within the definition of ¶ 2(v) of the BVI Order.

16

(Hr'g Trans. June 28, 2010 at 346-47.)  Paragraph 2(v) of the BVI Order, Mr. Farara explains, relates to corporate entities that actually have businesses that they are conducting in the BVI. (*Id.* at 347.)  A holding company that merely owns shares in another company and does not conduct business would not be considered a company that is "carrying on business" under BVI law. (*Id.* at 347.)  As such, when a holding company exercises rights in its capacity as a shareholder, it is not "carrying on business" under BVI law, regardless of whether such actions are effectuated in the BVI or elsewhere.  The Court finds that the Shareholder Resolution was an act taken by the Liquidator, not to carry on the business of Wellgate as Wellgate has no business to carry on under BVI law, but to exercise his rights as shareholder to obtain control over assets of Wellgate.

The Liquidator's argument that the Shareholder Resolution falls within ¶ 2(vii) of the BVI Order which provides him with, "power to do all acts and execute, in the name and on behalf of the Company, any deeds, receipts or other documents" is not convincing since the Liquidator is not merely executing a document; he is making a declaration of his rights as the sole shareholder of the Debtor by way of the Shareholder Resolution.  Instead, the Court finds that the Shareholder Resolution falls within ¶ 2(vi), among other sections of the BVI Order, which grants the Liquidator the "power to sell or otherwise dispose of property of [Wellgate]," because incidental to the successful sale of Wellgate's assets, the Liquidator must first obtain control over such assets.  Although the Liquidator may still be able to sell the Debtor without removing Marengère as the director of the Debtor, the dispute over management control of the Debtor would substantially reduced the value of those shares.  As the powers defined in ¶ 2(vi) of the BVI Order do not

17

require sanction of the BVI court, the Court finds that the Shareholder Resolution is a valid exercise of the Liquidator's powers as authorized by the BVI Order.

**Injunctive Relief**

The Plaintiffs seek injunctive relief, in addition to declaratory relief, against the Debtor and non-debtor subsidiaries. Under certain circumstances, courts have properly enjoined suits or other actions against non-debtor subsidiaries or other related parties. *see Secs. Investor Propt. Corp. v. Bernard L. Madoff Inv. Secs. LLC (In re Madoff)*, 429 B.R. 423 (Bankr. S.D.N.Y. 2010); *Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45 (Bankr. S.D.N.Y. 2006), *aff'd* 365 B.R. 401 (S.D.N.Y. 2007); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571 (Bankr. S.D.N.Y. 2009); *In re Petition of Davis*, 191 B.R. 577, 586 (Bankr. S.D.N.Y. 1996) (quoting *Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.)*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983)). Pursuant to the Court's findings as discussed herein, Marengère is permanently enjoined from interfering with the Liquidator's control over the assets of the Debtor's estate, including the Debtor's shares in the non-debtor subsidiaries, in this case the Bozel Subsidiaries.

However, the record is insufficient at this time with respect to the status of the non-debtor subsidiaries, the law governing the corporate governance dispute for those entities, and facts that demonstrate imminent irreparable harm to the estate for the Court to make a finding with respect to the Plaintiffs' request to permanently enjoin Marengère from continuing his role as the managing director of each of the Bozel Subsidiaries. Obviously, the Liquidator can take any action he may deem appropriate pursuant to applicable corporate law for each of the Bozel Subsidiaries.

The Defendants are directed to immediately withdraw the complaint in the Commercial Proceeding since this Court has ruled on all outstanding disputed issues in that proceeding. The Liquidator has represented to the Court that he is no longer seeking to enforce the retroactive effect of the Shareholder Resolution for the period of March 10, 2010 through April 7, 2010; therefore, the Court will not rule on this issue in this Opinion.

**Conclusion**

For the foregoing reasons, the Plaintiffs' request for declaratory relief is GRANTED. The Court declares that as a matter of corporate governance, the Liquidator of the Debtor's sole shareholder has the authority to take any and all actions consistent with that position, including but not limited to removing Marengère from his role as the Debtor's sole director, and to directing Marengère and the Debtor to turn over to the Liquidator books, records, and documents and to submit to the Liquidator's authority. The Plaintiffs' request for preliminary and permanent injunction pursuant to 11. U.S.C. § 105 and Bankruptcy Rule 7065(a) with respect to the assets of the Debtor is GRANTED, in part and DENIED, in part. Marengère and any individual or entity controlled or directed by him are enjoined (i) from exercising, or attempting to exercise, any control over the assets of the Debtor, specifically relevant here – the stock of the subsidiaries; (ii) from interfering in any way with the rights of the Liquidator, including the Liquidator's right to assert control over the assets of the Debtor; and (iii) directing Marengère, and any individual or entity controlled or directed by him, to turn over to the Liquidator any and all books and records of the Debtor.

The Plaintiffs' request for preliminary and permanent injunction pursuant to § 105 and Bankruptcy Rule 7065(a) with respect to the assets of the non-debtor subsidiaries is DENIED, without prejudice.

The Defendants are directed to immediately withdraw their complaints filed in the Luxembourg Proceedings.

The Liquidator is hereby directed to submit an order consistent with this Opinion.

Dated:  New York, New York
         August 4, 2010

>             **s/Arthur J. Gonzalez**
>             ARTHUR J. GONZALEZ
>             CHIEF UNITED STATES BANKRUPTCY JUDGE